United States Courts
Southern District of Texas
FILED
*November 10, 2026*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO.: 4:26-cr-720** |
| | § | |
| **v.** | § | |
| | § | |
| **SARAH MIJANGOS,** | § | |
| **Defendant** | § | |

# <u>INFORMATION</u>

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

## <u>Introduction</u>

*The Medicare Program*

1. Medicare was a federal health care program administered by the Centers for Medicare and Medicaid Services ("CMS") that provided benefits to individuals aged 65 or older or with qualifying disabilities ("beneficiaries").

2. Medicare Part D, established by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and effective January 1, 2006, provided prescription drug coverage through private insurance plans funded by CMS.

3. Pharmacies participated in Medicare Part D through agreements with Part D Plans, Pharmacy Benefit Managers ("PBMs"), or Pharmacy Services Administrative Organizations ("PSAOs"). PBMs administered prescription drug benefits and processed reimbursement claims on behalf of Part D Plans.

4. CMS assigned each pharmacy a National Provider Identifier ("NPI"), which the pharmacy used to submit reimbursement claims. Pharmacies could seek reimbursement only for medications legitimately prescribed and actually dispensed.

5. After dispensing a prescription, a pharmacy submitted a claim using its NPI and the beneficiary's Part D identification information. The Part D Plan or PBM reviewed the claim and, if approved, reimbursed the pharmacy directly or through a PSAO. Pharmacies could also submit out-of-network claims, generally at lower reimbursement rates.

6. Medicare and Medicare Part D Plan sponsors were "health care benefit programs" affecting commerce within the meaning of 18 U.S.C. § 24(b).

**<u>Commercial Insurance</u>**

7. Commercial insurers provided health care benefits to enrolled individuals ("members") and constituted "health care benefit programs" affecting commerce under 18 U.S.C. § 24(b).

8. Commercial prescription drug plans were offered by insurers, employers, and other private entities and administered through PBMs. Pharmacies submitted prescription claims to the applicable plan or PBM for reimbursement.

9. Pharmacies could seek reimbursement from commercial insurers only for medications legitimately prescribed and actually dispensed.

**<u>Relevant Entities, Individuals, and Financial Accounts</u>**

10. Defendant Sarah Mijangos **(MIJANGOS)** was a resident of 7035 Avenue L, Houston, TX 77011 and the owner of Paradigm Rx, LLC ("Paradigm") from in or about February 2025 through September 2025.

11. Paradigm was a limited liability company formed under the laws of Texas. Paradigm had a physical premises in 26077 Nelson Way, Ste. 804, Katy, TX 77494 where it purportedly operated as a pharmacy.

12. On or about February 13, 2025, **MIJANGOS** was added as the sole authorized signatory on Paradigm's Chase Bank checking account ending in 8606. On or about June 3, 2025, **MIJANGOS** was added as the sole authorized signatory on Paradigm's OneWorld Bank checking account ending in 0933.

## COUNT ONE
## Conspiracy to Defraud the United States, to False Statements Relating to Health Care Matters (18 U.S.C. § 371)

13. Paragraphs 1 through 12 of this Information are incorporated by reference as if fully set forth herein. Between in or about February 2025 and in or about September 2025, in the Southern District of Texas, the defendant,

**SARAH MIJANGOS,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to defraud the United States and to commit offenses against the United States, to wit: making false statements relating to health care matters contrary to Title 18, United States Code Section 1035.

### Purpose of the Conspiracy

The purpose of the conspiracy was for **SARAH MIJANGOS** to wrongfully enrich herself and others by facilitating Paradigm's submission of false and fraudulent claims to health care benefit plans for prescription drugs that it did not dispense and which were not legitimately prescribed. Over the course of the conspiracy, **SARAH MIJANGOS** and her co-conspirators facilitated

Paradigm's submission of claims for, and receipt of over $3.16 million from health care benefit programs.

**Overt Acts**

14. In furtherance of the conspiracy, and to achieve its object and purpose, the Defendant and her co-conspirators committed and caused to be committed at least one of the following overt acts:

a. On or about the dates specified below, in the Southern District of Texas and elsewhere, **SARAH MIJANGOS** and her co-conspirators submitted and caused to be submitted the following false and fraudulent claims to Medicare for payment for prescription medications that were not legitimately prescribed and that Paradigm did not actually dispense to Medicare beneficiaries:

b. On or about January 31,2025, co-conspirators directed **SARAH MIJANGOS** to purchase Paradigm for $129,500.

c. Between April 2025 and on or about August 2025, Chase Bank account x 8606 received over $1.71 million in payments from health care benefit plans for prescription medications that were not legitimately prescribed, and that Paradigm never dispensed.

d. On or about June 2025, OneWorld Bank account x 0093 received over $900,000.00 in payments from health care benefit plans for prescription medications that were not legitimately prescribed, and that Paradigm never dispensed.

e. Between February 2025 and in or about September 2025, **SARAH MIJANGOS** received $98,633 dollars for her role in the scheme as a straw owner of Paradigm.

All in violation of Title 18, United States Code, Section 371.

AARON REITZ
United States Attorney
Southern District of Texas

By: Tina Ansari
Tina Ansari
Alexander Alum
Assistant United States Attorneys